CONTINENTAL BANK & TRUST COM-PANY, as Receiver for Inland Empire Insurance Company, Appellant,

v.

John BRANDON, as Treasurer of the State of Alabama, (Laurie Hunter Brandon, as Executrix of the Will of John Brandon, deceased, substituted as appellee in place of John Brandon, Deceased), Appellee.

No. 18486.

United States Court of Appeals
Fifth Circuit.

Jan. 11, 1962.

Harold Williams, Birmingham, Ala., Arthur Nielsen, Salt Lake City, Utah, Martin, Vogtle, Balch & Bingham, Birmingham, Ala., for appellant.

James E. Clark, Leigh M. Clark, L. Murray Alley, Birmingham, Ala., for appellee, Cabaniss & Johnston, London, Yancey, Clark & Allen, Birmingham, Ala., of counsel.

Before CAMERON and WISDOM, Circuit Judges, and THOMAS, District Judge.

DANIEL HOLCOMBE THOMAS, District Judge.

Receiver for Inland Empire Insurance Company sued to recover on the indebted-

ness of Royal American Insurance Company to Inland, naming John Brandon, as Treasurer of the State of Alabama, a defendant. Brandon, as State Treasurer, had held securities deposited by Royal American for the benefit of its policy holders and creditors, as required by State law. He had released those securities on the written request of the State Superintendent of Insurance, to the alleged damage of Inland. As to Brandon, the jury found for the defendant, and judgment was entered accordingly. Hence this appeal.

The suit as originally filed was against Leslie L. Gwaltney, individually and as Superintendent of Insurance for the State of Alabama; John Brandon, individually and as Treasurer of the State of Alabama; Royal American Insurance Company; and others. Through dismissals, summary judgment, directed verdicts, and the like, the case as tried to the jury was Continental, as Receiver of Inland, versus Gwaltney, individually and as Superintendent of Insurance, and Brandon, as Treasurer of the State of Alabama.

Royal American Insurance Company was incorporated under the laws of the State of Alabama in 1954. At the time of its incorporation, and in compliance with Title 28, Section 142, Code of Alabama 1940,[1] United States Treasury bonds in the amount of $100,000 had been deposited with the Treasurer of Alabama "for the better protection of its policy holders and creditors."

The business of Royal American was one of reinsurance. Through a series of insurance company formations, liquidations, mergers, receiverships, and reinsurance transactions, Royal American became indebted to Inland Empire Insur-

ance Company, incorporated under the laws of Idaho. Under a "Quota Share Treaty of Reinsurance" executed between Inland and Royal American (the reinsurer), and various other agreements, both oral and written, Inland made certain payments to Royal American, for which Royal American fulfilled its obligations to Inland only in part.

The only business done by Royal American in the State of Alabama was the "treaty of reinsurance" with Inland. In December 1955, Royal American filed a petition for the appointment of a receiver in the Circuit Court of Madison County, Alabama. The petition was denied. At that time, Royal American was indebted to Inland in an amount well over a million dollars.

Meanwhile, on November 29, 1955, the Continental Bank & Trust Company had been appointed Receiver for Inland by the District Court of Idaho. Learning that the petition of Royal American for receivership had been filed, Continental, as receiver for Inland, through its attorney, Mr. Arthur Nielsen, attempted to make an investigation as to Royal American's financial condition. On December 11, 1955, Mr. Nielsen went to Montgomery, Alabama, had a conference with Mr. Gwaltney, Superintendent of Insurance, with regard to Inland's claim against Royal American. Gwaltney expressed concern over the financial condition of Royal American, and assured Nielsen that the United States Treasury bonds on deposit with the Treasurer of Alabama would not be released until such time as the claim of Inland against Royal American was adjudicated. Nielsen also discussed this matter with an Assistant Attorney General. (The Attorney General of Alabama is legal advisor for all of the

---

1. "§ 142. Amount invested in securities; deposit with state treasurer.—Every such company" [miscellaneous insurance companies] "organized and chartered under the laws of this state, for the better protection of its policy holders and creditors, shall keep at all times the sum of one hundred thousand dollars invested in bonds and securities worth not less than said sum, and subject to the ap-

proval of the superintendent of insurance, and deposited with the state treasurer, who shall hold such securities in the same manner as is now prescribed in section 49 of this title." [Reference to "section 49" is obviously a misprint for Section 73. See Code of Alabama 1928, Section 8515, referring to Section 8367, now Section 73, Title 28, Code of 1940 and Code of 1958.]

departments of the State of Alabama.) On the following day, December 12, 1955, Nielsen went to Huntsville, Alabama, and discussed the matter with Mr. Carl Morring, Jr., Secretary of Royal American. Mr. Nielsen did not talk with Brandon and no message was ever sent to the State Treasurer's office informing that office in any way of Inland's claim against the deposited securities of Royal American.

In the spring of 1956, Morring (Secretary of Royal American) went to Gwaltney and requested that the bonds on deposit with the Treasurer of the State of Alabama be released. Gwaltney at first refused that request. During the trial, a document of questionable authenticity, purporting to be a resolution of the Board of Directors of Royal American, was introduced for the purpose of showing that Morring did make application to the Superintendent of Insurance on June 29, 1956, for the release of the bonds. Mr. Bill Armstrong, Deputy Superintendent of Insurance, testified that he saw the document and approved it as to form. (It is not shown that Morring had knowledge of the disposition or intended use of the bonds.) Thereafter, a letter dated June 29, 1956, was directed by Gwaltney to John Brandon, Treasurer of Alabama, requesting that he "deliver to the bearer" the certain listed United States Treasury bonds in the amount of $100,-000, held by the Treasurer for Royal American's account. These bonds were accordingly released from Brandon's office, receipted for by the Superintendent of Insurance on the bottom of the written request.

Before issuing the request for release, Gwaltney had been indemnified against liability arising out of his part in the transaction by a bond issued by Alabama General Insurance Company. (That company, incidentally, at the time of the trial was also in receivership.) In some manner, not clearly explained, these bonds, belonging to Royal American, came into the custody of Mr. Richmond Flowers, President of Alabama General Insurance Company. It is interesting to follow the proceeds of the sale of these bonds into and out of the "loss account" opened by Royal American in the Alabama National Bank of Montgomery on the same day that the sale price of the bonds was deposited. But it could serve no useful purpose here to recount those events. They hold no answer to the real question presented on appeal. That is, whether or not Brandon, as Treasurer of the State of Alabama, is civilly liable to Continental, as Receiver for Inland, for the cash value of the released securities.

Appellant insists that on portions of Brandon's answer alone, it was entitled to have its motion for summary judgment granted as to the issue of liability of Brandon to appellant. Appellant also contends that the trial court further erred in denying appellant's motion for a directed verdict and its motion for judgment notwithstanding the verdict, as well as in certain rulings on the admissibility of evidence as to practices prevailing in the Treasurer's Office.

The general duties of the Treasurer of the State of Alabama are found in Title 55, Section 211, Code of Alabama 1940, the pertinent portion of which section is set forth in the footnote below.[2] The controversy here, however, is bottomed upon the provisions of Section 73 of Title 28, Code of Alabama 1940. That section reads as follows:

"Treasurer to take and hold deposits of securities; exchange and withdrawal of same.—The treasurer of the state, in his official capacity,

---

2. "§ 211. Powers, functions and duties.—The powers, functions and duties of the treasurer shall be: * * * To have the custody of and to keep safe all moneys, bonds, mortgages, and other securities required or permitted by law to be deposited with the state or any officer thereof, by any bank, trust company, insurance company, mutual aid or benefit association, or other person or corporation, and also all securities held by the state, including those held for the account of any sinking fund (including those heretofore in the custody of the sinking fund commission). * * * * "

shall take and hold deposits made by any domestic insurance company, for the purpose of complying with the laws of any other state, to enable such company to do business in such state, and shall, also in like manner, take and hold any deposit made by a foreign insurance company under any law of the state. The company making such deposit shall be entitled to the income thereof, and may, from time to time, with the consent of the treasurer, when not forbidden by the law under which the deposit is made, change in whole or in part the securities which compose the deposit for other competent securities of equal value. Upon request of any domestic life insurance company, said treasurer may return to such company the whole or any portion of the securities of such company, *when he shall be satisfied* that the securities so asked to be returned are subject to no liability, and not required to be longer held by any provision of law, or purpose of the original deposit. And he may return to the trustee, or other representative authorized for that purpose, of a foreign insurance company, any deposit made by such company, when it shall appear that such company had ceased to do business in the state, and is under no obligation to policy holders or other persons in the state, or in the United States, for whose benefit such deposit was made." (Emphasis supplied.)

The complaint charged that "Brandon did wrongfully give up possession of such bonds" or "did wrongfully release such bonds." Brandon's answer sets out, among other things, the following:

\* \* \* \* \* \*

"7. Defendant alleges that the records of the Treasurer of the State of Alabama, show that upon June 29, 1956, said Leslie L. Gwaltney, as Superintendent of Insurance of the State of Alabama, by letter dated June 29, 1956, requested defendant, John Brandon, as Treasurer of the State of Alabama, to deliver to the bearer thereof, certain securities held by the Treasurer for the defendant, Royal American Insurance Company, a Corporation, as follows: United States Treasury Bonds, 2½% of 1967–72, dated November 15, 1945, due December 15, 1972–67, Numbers 15369 K, 15370 L, 55398 J, 337063 C, 348055 E–59 K, \* \* \* 10 at M; and defendant, John Brandon, further alleges that the above listed securities were delivered to the defendant, Leslie L. Gwaltney, as Superintendent of Insurance of the State of Alabama.

"First Defense

\* \* \* \* \* \*

"3. Defendant, John Brandon, as Treasurer of the State of Alabama, acting in accordance with a long standing practice, relied upon the expert knowledge of the Superintendent of Insurance concerning the insurance business in Alabama, and the condition of companies under the said Superintendent's supervision, to satisfy himself that no creditors or policy holders had any claim against the securities held by him for the account of the defendant, Royal American Insurance Company, and released to the Superintendent of Insurance, said securities as requested."

It is contended by the appellant that Brandon's answer itself, in the portion quoted above, shows a violation of Section 73. Appellant argues that the duties set out in Section 73 are non-delegable, though Brandon's answer plainly shows he delegated those responsibilities to the Superintendent of Insurance. Appellant insists that Brandon did not exercise any judgment or discretion in this matter; that he, in effect, did nothing. Appellant further contends, in regard to its motion for judgment notwithstanding the verdict or for a new trial, "that (1) the entire evidence as a matter of law showed without dispute or contradiction that Brandon violated his statutory duty in releasing the bonds of Royal American

to someone other than a duly qualified representative of Royal American, without taking any action to satisfy himself that the bonds were not subject to any liability and no longer required to be held by any provision of law or purpose of the original deposit, (2) that the trial court, in the light of Title 28, Section 73, should not have admitted evidence of prior practice in the office of Treasurer with regard to the release of such securities, and (3) that the trial court, having admitted evidence of such prior practice, should have admitted evidence of subsequent office practice regarding the release of securities as rebuttal testimony."

■ The Treasurer of the State of Alabama is a constitutional officer, and as such, has certain duties which are ministerial and certain duties which are judicial. Under Alabama law, an official is liable only for malfeasance and misfeasance in the performance of his ministerial duties, and is not liable in a civil action for performance of his judicial acts, even if he acts corruptly.[3]

Appellee moved the trial court for a directed verdict, citing among other grounds its contention that the duties imposed by Section 73, Title 28, are judicial in nature; hence, the release of the deposited securities constituted a judicial act, which cannot be made the basis of a suit for civil liability. This motion, overruled at the close of plaintiff's evidence, was refiled at the close of all the evidence, and was then taken under advisement. Judgment was later entered for Brandon on the verdict of the jury.

If releasing the bonds was a ministerial act, the question of "whether or not the defendant * * * exercised the care and discretion which a reasonable man would exercise under like conditions and circumstances was a question for the jury."[4] And appellee argues that the Treasurer has no duty, occasion, or power to investigate or examine insurance companies, and no facilities for doing so; hence, it was not unreasonable that Brandon and his predecessors had relied upon the Superintendent of Insurance for information on which to base decisions pertaining to insurance matters. The Superintendent of Insurance from the very nature of his duties was familiar with the operations of insurance companies and the propriety of releasing or continuing such deposits. Appellee also argues that counsel for appellant, too, relied upon the Superintendent of Insurance in failing to notify the Treasurer of Inland's claim, and that this failure was the proximate cause of appellant's injury.

■ There were no exceptions to the court's oral charge, which we think fully and fairly instructed the jury. The trial court pointed out, among other things, that the burden was upon the plaintiff to reasonably satisfy the jury that Brandon wrongfully did the things charged in the complaint; that the quoted portion of Section 73, making provision for the return of the bonds, did not set up any test by which the Treasurer was required to satisfy himself; that custom and practice could not change the statute, but that evidence had been admitted as to practice and custom in the Treasurer's office purely to give the jury some idea by which to judge what was care in the premises. We think this testimony on prior custom and practice was properly admitted as bearing on the question of whether or not Brandon in releasing the bonds acted as a reasonable man. The jury found that he did.

■ We think it was not unreasonable for the Treasurer to rely upon information furnished by the Superintendent of Insurance. The information had to be obtained from some source, and it is a presumption of law that a public officer will faithfully perform his duty.[5] Under

3. Scott v. Ryan et al., 115 Ala. 587, 22 So. 284.

4. Barnhill v. Lightner, 241 Ala. 303, 2 So. 2d 779.

5. Harris v. State, 257 Ala. 3, 60 So.2d 266.

the evidence and the law as explained to the jury, we do not think that the trial court erred in denying the appellant's motion for judgment notwithstanding the verdict or a new trial.

█ We hold, however, that under Section 73 of Title 28, Brandon was performing an official judicial act in releasing the bonds, and hence was entitled to his motion for a directed verdict on that ground. As the trial court instructed the jury, " * * * the statute says that he shall be satisfied. The statute does not say or set up any test by which he shall satisfy himself." This is the hallmark of judicial action. In State ex rel. Higdon v. Jelks, Governor, 138 Ala. 115, 35 So. 60 (1903), Judge Haralson, quoting liberally from earlier authorities, discussed at length the difference between judicial action and ministerial duty, saying:

" 'Official action, the result of judgment or discretion is judicial action. The duty is ministerial, when the law, exacting its discharge, prescribes and defines the time, mode and occasion of its performance, with such certainty that nothing remains for judgment or discretion. Official action, the result of performing a certain and specific duty, arising from fixed and designated facts, is a ministerial act.' Ministerial acts in order to be controlled by courts, must be of such a nature, that they might as well have been imposed on some one else, than the officer named. 'Judicial power is authority vested in some court, officer or person, to hear and determine when the rights of persons or property, or the propriety of doing an act, are the subject-matter of adjudication.' Grider v. Talley [Tally], 77 Ala. [422] 424, 54 Am. Rep. 65; Mechem on Pub. Officers, § 657."

" 'When the power is clearly defined and enjoined, does not involve the exercise of discretion or judgment, and no alternative is left to the officer charged with its execution; when he must act without inquiry, and without evidence, and the mode of action is expressly declared, the power is purely ministerial. When, however, the power involves the exercise of judgment and discretion; when it is to be exercised only in an ascertained event and on the concurrence and existence of particular facts, and the officer charged with the execution of the power must determine whether the event has arisen, or the facts exist requiring its exercise, then the power is judicial, or in its nature judicial.' Ex parte Thompson, 52 Ala. 98."

The law is clear in Alabama and in all other jurisdictions in so far as we are able to determine, that an official is not liable in a civil action for his official judicial acts. One of the leading cases in Alabama is that of Irion et al. v. Lewis, 56 Ala. 190. The suit in the lower court was commenced in 1874. Judge Stone, in his opinion, at page 197, quoted Judge Beardsley in his decision in the case of Weaver v. Devendorf, 3 Denio, N.Y., 117, as follows:

"He added, that he preferred to 'place the decision on the broad ground, that no public officer is responsible in a civil suit, for a judicial determination, however erroneous it may be, and however malicious the motive which produced it. Such acts, when corrupt, may be punished criminally, but the law will not allow malice and corruption to be charged in a civil suit against such officer, for what he does in the performance of a judicial duty. The rule extends to judges from the highest to the lowest; to jurors, and to all public officers, whatever name they may bear, in the exercise of judicial power."

The rationale of this rule is set out in the case of Spalding v. Vilas, 161 U.S.

483, 498, 16 S.Ct. 631, 637, 40 L.Ed. 780, in which Mr. Justice Harlan states:

"* * * In exercising the functions of his office, the head of an executive department, keeping within the limits of his authority, should not be under an apprehension that the motives that control his official conduct may at any time become the subject of inquiry in a civil suit for damages. It would seriously cripple the proper and effective administration of public affairs as intrusted to the executive branch of the government, if he were subjected to any such restraint. He may have legal authority to act, but he may have such large discretion in the premises that it will not always be his absolute duty to exercise the authority with which he is invested. But if he acts, having authority, his conduct cannot be made the foundation of a suit against him personally for damages, even if the circumstances show that he is not disagreeably impressed by the fact that his action injuriously affects the claims of particular individuals."

See also Yaselli v. Goff, 12 F.2d 396, 56 A.L.R. 1239.

We again quote the pertinent sentence of Section 73 of Title 28: "Upon request of any domestic life insurance company," [or miscellaneous insurance company, see Footnote 1], "said treasurer may return to such company the whole or any portion of the securities of such company, *when he shall be satisfied* that the securities so asked to be returned are not required to be longer held by any provision of law, or purpose of the original deposit." The evidence amply supports the fact that the request for the release was made by Royal American. It seems to us, therefore, that there could be no construction other than that Brandon in releasing the bonds pursuant to this request was performing an official judicial act and was therefore entitled to judgment in his favor. Accordingly, the case is

Affirmed.