Frank R. VAUGHN et al., Plaintiffs,

v.

Henry C. REED et al., Defendants.

Civ. A. No. 69–C–39–D.

United States District Court,
W. D. Virginia,
Danville Division.

May 15, 1970.

Robert P. Dwoskin, Roanoke, Va., for plaintiffs.

Jackson L. Kiser, Young, Kiser, Frith & Haskins, Martinsville, Va., for defendants.

## OPINION AND JUDGMENT

DALTON, Chief Judge.

Plaintiffs, fathers of children who attend the Martinsville School System, seek an injunction against the religious

education programs being conducted in the Martinsville elementary schools. Defendants contend that the program does not contravene the First Amendment because it is an attempt to teach the students about religion rather than to indoctrinate them thereto.

The uncontroverted facts appear as follows: Since 1942, the Week-Day Religious Education Council, a private organization, has sent teachers into selected grades of the Martinsville schools for religious education. These classes are held in the regular classrooms during school hours. The regular teacher is replaced temporarily by a religious education instructor employed by the Council. At the beginning of the school year, the regular teachers hand out cards prepared by the Council for the purpose of obtaining the consent of the parents to allow their children to take this program. Those children, whose parents have not consented, leave the classroom during these programs and are given a "study" period. At the present, these programs are conducted weekly for one hour in the third, fourth and fifth grades of the Martinsville elementary schools.

■ The plaintiffs have moved for summary judgment and the defendants seek a directed verdict. To the extent that defendants' motion is founded on plaintiffs resting the case in the initial depositions, the motion is denied. Plaintiffs' motion is granted to the extent hereinafter set forth in this opinion and judgment.

The controlling authority in this suit is Illinois ex rel. McCollum v. Board of Education, 333 U.S. 203, 68 S.Ct. 461, 92 L.Ed. 649 (1948). In *McCollum*, an organization called the Champaign Council on Religious Education obtained permission from the public school authorities of Champaign, Illinois to offer religious instruction to pupils in grades four through nine. Classes were made up of children whose parents signed printed cards requesting that their children be permitted to attend. The classes were held weekly for 30 to 45 minutes.

The council employed religious teachers at no expense to the school authorities, but subject to approval of the superintendent of schools. Classes were conducted in the regular classrooms. Students who did not choose to take the religious instruction were required to leave the classrooms and go elsewhere for pursuit of their secular studies.

Justice Black, writing for the court, found that the Establishment Clause of the First Amendment was violated by the use of a tax-supported public school system to aid religious groups in spreading their teachings. The following language is a concise statement of Justice Black's objections to the Champaign program:

Here not only are the state's tax-supported public school buildings used for the dissemination of religious doctrines. The State also affords sectarian groups an invaluable aid in that it helps to provide pupils for their religious classes through use of the state's compulsory school machinery. This is not separation of Church and State. 333 U.S. at 212, 68 S.Ct. at 465 and 466, 92 L.Ed. at 659.

In a concurring opinion, Justice Frankfurter (joined by Justices Jackson, Rutledge and Burton) concerned himself with the disruptive influence the program created in the schools:

The non-sectarian or secular public school was the means of reconciling freedom in general with religious freedom. The sharp confinement of the public schools to secular education was a recognition of the need of a democratic society to educate its children, insofar as the State undertook to do so, in an atmosphere free from pressures in a realm in which pressures are most resisted and where conflicts are most easily and most bitterly engendered. Designed to serve as perhaps the most powerful agent for promoting cohesion among a heterogeneous democratic people, the public school must keep scrupulously free from entanglement in the strife of

sects. The preservation of the community from divisive conflicts, of Government from irreconcilable pressures by religious groups, of religion from censorship and coercion however subtly exercised, requires strict confinement of the State to instruction other than religious, leaving to the individual's church and home, indoctrination in the faith of his choice. 333 U.S. at 216 and 217, 68 S.Ct. at 468, 92 L.Ed. at 661.

Black spoke of the "dissemination of religious doctrines" by the program and Frankfurter made it a point to note that "[t]he courses do not profess to give secular instruction in subjects concerning religion." In a separate concurring opinion, Justice Jackson laid the groundwork for what may be taught in the public schools concerning religion:

> The fact is that, for good or for ill, nearly everything in our culture worth transmitting, everything which gives meaning to life, is saturated with religious influences, derived from paganism, Judaism, Christianity—both Catholic and Protestant—and other faiths accepted by a large part of the world's peoples. One can hardly respect a system of education that would leave the student wholly ignorant of the currents of religious thought that move the world society for a part in which he is being prepared. 333 U.S. at 236, 68 S.Ct. at 477, 92 L.Ed. at 671.

In School District of Abington Township, Pa. v. Schempp, 374 U.S. 203, 225, 83 S.Ct. 1560, 1573, 10 L.Ed.2d 844, 860 (1963), Justice Clark, writing for the court, redefined and enlarged Jackson's *McCollum* language:

> [I]t might well be said that one's education is not complete without a study of comparative religion or the history of religion and its relationship to the advancement of civilization. It certainly may be said that the Bible is worthy of study for its literary and historic qualities. Nothing we have said here indicates that such study of the Bible or of religion, when presented objectively as part of a secular program of education, may not be effected consistently with the First Amendment. But the exercises here do not fall into those categories. They are religious exercises, required by the States in violation of the command of the First Amendment that the Government maintain strict neutrality, neither aiding nor opposing religion.

Turning to the facts of this case, I find that the holding of the *McCollum* decision is overwhelming. The facts of both cases are similar; defendants allege that in Martinsville the students are taught about religion rather than being indoctrinated to religion. At least part of the evils which the court was concerned with in *McCollum* result under the present system. The children who do not take the program are separated from the other members of the class. Resulting pressures may have influenced some parents into allowing their children to take the classes. Further, the defendants admit that unconstitutional teachings have already taken place under the present system.[1]

The following modifications, mainly procedural, should be made to the present sytem:

▇▇▇ First, the mere fact that certain students are permitted to leave makes the court question whether students are being indoctrinated to religion rather than being taught within the permissible boundaries. If the course is taught within constitutional limits, every student should be required to attend. If the course is necessary to the education of one child, it is equally necessary to the education of all students. The controversial nature of a course should not be grounds for dismissing a student from its study. Once the school board determines that a particular course should be taught in the schools, the court sees no justification for allowing a student or his

---

1. Defendants admit that the book, My Adventures in Christian Living, previously ▇▇▇▇ used in these classes, amounted to the practice of religion.

parents to decide that the student will not attend. While permitting non-attendance does not ordinarily raise constitutional questions, it does indicate that a constitutionally questionable course is being taught in this situation. If the course is being properly taught within the constitutional limits, there is no reason for non-attendance by any student. This will eliminate any possible divisive conflicts by reason of such a program.

■ Second, the fact that state schools are being used by teachers, paid and controlled by a religious group, suggests that the state is aiding religion in violation of the Establishment Clause of the First Amendment. The better procedure would be for the school board to hire and control the teacher. Of course the school authorities may hire special teachers for this course—in fact the present special teachers appear highly qualified. However, it is not the purpose of this court nor is it empowered to dictate what qualifications a teacher must possess and which teacher any school should hire.

■ Finally, the teachers must conscientiously refrain from any action which amounts to the indoctrination or practice of religion and should keep the program free from criticism on this ground. The court has previously quoted from School District of Abington v. Schempp, *supra*, which outlines the constitutional scope of permissible study concerning the Bible or religion. In fact, the stated objectives of the present course do not contravene the Establishment Clause of the First Amendment.[2]

The Martinsville program, if taught in conformity with the alleged objectives of the present course and if the objections of the *McCollum* decision are overcome, is not unconstitutional. The defendants, of course, are free to initiate any other constitutional plan in place of the present plan or in lieu of the suggested plan of the court, which is: That the program encompass all students, be controlled by the school authorities and practiced without indoctrination of religion. The court notes that the system used in Zorach v. Clauson, 343 U.S. 306, 72 S.Ct. 679, 96 L.Ed. 954 (1952), was found not to violate the First Amendment.

■ The court sustains the position of plaintiff that no religious education program should be conducted in the public schools which employs material or practices which would amount to an indoctrination of religion. At the same time the court holds that a program encompassing all students controlled by the school authorities and practices without indoctrination of religion is not unconstitutional, all of which is adjudged and ordered.

It is further adjudged and ordered that in the event that defendants, or those in authority, desire to have a religious education program, they are directed to comply with the foregoing guidelines.

The court having ruled on the basic issue presented in this case, it is now stricken from the docket, with the right to each party, for good cause shown, to have the case reinstated.

The clerk is directed to send a copy of this opinion and judgment to counsel of record.

2. Miss Robertson, a teacher of the course, testified as follows:
   * * * the purpose of it [Week-Day Religious Education Council] is the same purpose as my teaching. To help the boys and girls understand the Bible. We have the feeling that in order to understand the country in which we live, the democracy, and to understand our western civilization, to understand our own culture, [to] understand the art you see by the great artists, [to] understand the music of today, one has to know something about the background of the Bible or these things have very little meaning, and we feel like it's important that we give them. We're not trying to convert them to any religion, if that's what you mean. We're just trying to help them understand today's civilization.