**Hugh P. NICHOLSON, Plaintiff,**

v.

**BOARD OF COMMISSIONERS OF the ALABAMA STATE BAR ASSOCIA-TION et al., Defendants.**

**Civ. A. No. 3395–N.**

United States District Court, M. D. Alabama, N. D.

Feb. 1, 1972.

J. Knox Argo, Montgomery, Ala., and Ralph Knowles (Drake & Knowles), Tuscaloosa, Ala., for plaintiff.

William H. Morrow, Jr. (Gen. Counsel, Ala. State Bar), Montgomery, Ala., for defendants Bd. of Comm'rs of Ala. State Bar Assn. and Reginald T. Hammer.

William J. Baxley, Atty. Gen., and Gordon Madison, Asst. Atty. Gen. of Ala., Montgomery, Ala., for defendant Justices of the Supreme Court of Ala.

## OPINION

Before RIVES, Circuit Judge, and JOHNSON and VARNER, District Judges.

### BY THE COURT:

Title 46, section 39 of the present Alabama Code [1] provides an oath of office to be taken by each applicant for admission to the Alabama Bar. Plaintiff challenges that portion of the statute which requires him to close the oath with the phrase "so help me God." He contends that it would be contrary to his religious principles for him to take an oath to God before state authorities.

It has been stipulated by the parties that the plaintiff was awarded the Juris Doctor degree from the University of Alabama on June 1, 1969. He successfully completed the bar examination

---

1. Title 46, § 39 provides as follows:
   "Every attorney at law before being permitted to practice, shall take the following oath or affirmation before an officer authorized to administer oaths:
   " 'I do solemnly swear (or affirm) that I will demean myself as an attorney, according to the best of my learning and ability, and with all good fidelity, as well to the court as to the client; that I will use no falsehood or delay any person's cause for lucre or malice, and that I will support the constitution of the State of Alabama and of the United States, so long as I continue a citizen thereof, so help me God.' "

given in July and was approved by the Committee on Character and Fitness of the State Bar. On September 19, 1969, the plaintiff wrote the Chief Justice of the Supreme Court of Alabama [2] requesting that the oath be administered to him without the phrase "so help me God." The Chief Justice denied this request and instructed the plaintiff that he would not be admitted to practice unless he took the oath in its entirety. Plaintiff subsequently refused to take the oath and was denied a license to practice law.

Plaintiff then filed an ex parte petition in the Supreme Court of Alabama asking the court to authorize that the oath be administered to him without the concluding phrase. In his petition the plaintiff asserted three alternative justifications for omitting the phrase:

(1) That the requirement of the words "so help me God" infringes "on his religious freedom as guaranteed by the Constitution of the United States";

(2) that the requirement of the phrase in question violates Article I, section 3 of the Alabama Constitution which states "that no religious test shall be required as a qualification to any office or public trust under this state; and that the civil rights, privileges, and capacities of any citizen shall not be in any manner affected by his religious principles";

(3) that since "[t]he Oath begins 'I do solemnly swear (or affirm) that I will . . .' [t]he presence of the words 'or affirm' indicates that the framers meant for alternative versions of the Oath to be acceptable."

On October 6, 1969, the Alabama Supreme Court entered the following order denying plaintiff's petition:

"Comes Hugh P. Nicholson and files his petition wherein he prays that this Court authorize the oath as an attorney, as prescribed by Title 46, Section 39, Code of Alabama 1940, be administered to the Petitioner without the use of the words, 'So help me God'; and that the Petitioner be licensed to practice as an attorney at law in all the Courts of this State upon his taking such oath, without using the words, 'So help me God'; and the petition being examined and understood by the Court,

"IT IS CONSIDERED AND ORDERED that the petition be and the same is hereby denied."

Plaintiff then sought a writ of certiorari in the Supreme Court of the United States which was denied on May 25, 1970. Nicholson v. Alabama, 1970, 398 U.S. 930, 90 S.Ct. 1824, 26 L.Ed.2d 94.

■ Plaintiff commenced this suit in July, 1971, seeking both a declaration holding that Title 46, section 39 is violative of the Federal Constitution and an injunction requiring that the defendants admit him to the practice of law. Plaintiff also impugns the constitutionality of Title 46, section 40,[3] which imposes a fine for practicing law without having first taken the oath. His complaint to this Court alleges that the statutory enactment at issue is violative of rights guaranteed by Article VI of the Constitution of the United States and by the first amendment and the fourteenth amendment to the Constitution. Jurisdiction is asserted under 28 U.S.C. §§ 1343(3) and 2201 and under 42 U.S.C. § 1983. Although the complaint originally contained a claim for damages in excess of $10,000, it was later stipulated that no monetary damages are involved. In any event, the doctrines of judicial and official immunity would, in all likelihood, shield the defendants from any

---

2. The Chief Justice at that time was The Honorable J. Ed Livingston. The present Chief Justice is The Honorable Howell T. Heflin.

3. Title 46, § 40 provides as follows:
"If any attorney commences practice before taking the oath as prescribed by the preceding section, he forfeits the sum of two hundred dollars, one-half to the use of the person suing for the same, and the other to the state."

civil liability.[4] Pierson v. Ray, 1967, 386 U.S. 547, 553–555, 87 S.Ct. 1213, 18 L.Ed. 2d 288; Brown v. Dunne, 7 Cir. 1969, 409 F.2d 341, 343; Continental Bank & Trust Co. v. Brandon, 5 Cir. 1962, 297 F.2d 928, 932. After holding an evidentiary hearing, the case is now before this Court on the request for a preliminary injunction by the plaintiff and on motions to dismiss filed by each of the defendants.

By their several motions to dismiss, the defendants have admitted, for purposes of such motions, the material facts alleged in the complaint. Jenkins v. McKeithen, 1969, 395 U.S. 411, 421, 89 S.Ct. 1843, 23 L.Ed.2d 404; Coffee v. Permian Corp., 5 Cir. 1970, 434 F.2d 383, 384. Additionally, it is well settled that a complaint should not be dismissed for failure to state a claim unless it appears beyond cavil that the plaintiff can prove no set of supportive facts which would entitle him to the relief sought. Conley v. Gibson, 1957, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80. Viewed in this light, it is clear that plaintiff has alleged facts sufficient to withstand the motions to dismiss for want of federal subject-matter jurisdiction.

The question then becomes whether this case should be heard by a three-judge panel. Owing to the burdensome aspects of the three-judge procedure, the Supreme Court has interpreted 28 U.S.C. § 2281 not "as a measure of broad social policy to be construed with great liberality, but as an enactment technical in the strict sense of the term and to be applied as such." Phillips v. United States, 1941, 312 U.S. 246, 251, 61 S.Ct. 480, 483, 85 L.Ed. 800. Thus, a three-judge panel is appropriate only when the constitutional question presented is substantial. A lack of substantiality may result either because the claim is obviously without merit or because it is unsound in light of previous decisions of the United States Supreme Court. California Water Service Co. v. City of Redding, 1938, 304 U.S. 252, 255, 58 S.Ct. 865, 82 L.Ed. 1323. Finally, the challenged statute must be of state-wide application. Moody v. Flowers, 1967, 387 U.S. 97, 101, 87 S.Ct. 1544, 18 L.Ed.2d 643; Griffin v. County School Board, 1964, 377 U.S. 218, 227–228, 84 S.Ct. 1226, 12 L.Ed.2d 256.

The statutory oath here at issue is to be taken by all prospective attorneys and thus applies throughout the State. The question whether a state may require a person who objects on religious grounds to take an oath or affirmation invoking the help of God is not frivolous

---

4. Though it is well settled that judicial officers, such as the Justices of the Alabama Supreme Court, are immune from monetary damages, they are not immune from preventive relief. Jacobson v. Schaefer, 7 Cir. 1971, 441 F.2d 127, 130 ("We point out again that we are applying the judicial immunity doctrine only to damage suits against judges. The doctrine does not reach suits for purely equitable relief."); Bramlett v. Peterson, M.D.Fla.1969, 307 F.Supp. 1311, 1321 ("The rule of judicial immunity under 42 U.S.C. § 1983 generally is restricted to damage suits and does not apply to suits for injunctive and protective relief. The precedent for enjoining state judges is ample. E. g., Phillips v. Cole, 298 F. Supp. 1049 (N.D.Miss., 1968); United States v. Clark, 249 F.Supp. 720, 727–728 (S.D.Ala., 1965) (3-judge court)."); Phillips v. Cole, N.D.Miss.1968, 298 F.Supp. 1049 (Preliminary injunction issued against defendants some of whom were judicial officers.); Rousselle v. Perez, E. D.La.1968, 293 F.Supp. 298, 299; Stambler v. Dillon, S.D.N.Y.1968, 288 F.Supp. 646, 649; Hulett v. Julian, M.D.Ala. 1966, 250 F.Supp. 208; United States v. Clark, S.D.Ala.1965, 249 F.Supp. 720, 727 ("However, such a doctrine of judicial immunity applies only when those officials are faced with civil suits for damages in connection with the performance of their official duties." Emphasis in original.). Accord Law Students Civil Rights Research Council, Inc. v. Wadmond, S.D.N.Y.1969, 299 F.Supp. 117, 133, aff'd 1971, 401 U.S. 154, 91 S.Ct. 720, 27 L.Ed.2d 749. Dicta to the contrary appear in Mackay v. Nesbett, D. Alaska 1968, 285 F.Supp. 498, 508. Without discussion of judicial immunity the decision in that case was affirmed in Mackay v. Nesbett, 9 Cir. 1969, 412 F.2d 846.

and so far as we have discovered that question has not been decided by the Supreme Court of the United States. Accordingly, it is our judgment that the case be heard before a district court of three judges pursuant to 28 U.S.C. §§ 2281 and 2284.

■ The defendant Baxley, as Attorney General appearing for himself and for the Justices of the Alabama Supreme Court, asserts that plaintiff's cause of action is barred by Alabama's one-year statute of limitations.[5] As a general proposition state statutes of limitation do truncate actions brought under 42 U.S.C. § 1983. O'Sullivan v. Felix, 1914, 233 U.S. 318, 34 S.Ct. 596, 58 L.Ed. 980; Beard v. Stephens, 5 Cir. 1967, 372 F.2d 685, 688. If Alabama's one-year period began to run from the date on which the Chief Justice refused to administer the oath,[6] this defense would seemingly prevail.[7]

■ At the outset, however, it should be noted that the relief sought in this cause is equitable in nature—that is, declaratory and injunctive. As was indicated earlier, the plaintiff seeks to recover no monetary damages. And we choose to follow the rationale espoused by the United States Supreme Court in Holmberg v. Armbrecht, 1946, 327 U.S. 392, 395–396, 66 S.Ct. 582, 584, 90 L.Ed. 743:

> "The present case concerns not only a federally-created right but a federal right for which the sole remedy is in equity. . . . We do not have the duty of a federal court, sitting as it were as a court of a State, to approximate as closely as may be State law in order to vindicate without discrimi-

nation a right derived solely from a State. We have the duty of federal courts, sitting as national courts throughout the country, to apply their own principles in enforcing an equitable right created by Congress. . .

> "Traditionally and for good reasons, statutes of limitation are not controlling measures of equitable relief." (Citations omitted.)

Thus, since equitable relief alone is sought on behalf of a federally-created right, the plaintiff's suit is not subject to the one-year statute of limitations in force in Alabama.

■ The Board of Commissioners of the Alabama State Bar Association; Reginald T. Hamner, individually and as Secretary of the Alabama State Bar Association; and William Baxley, individually and as Attorney General of the State of Alabama, have all moved that they be dismissed as parties to this action. The above-named parties argue that they are without authority to admit the plaintiff to the practice of law. Mr. Baxley contends that he is particularly without any role whatsoever in the process of admitting attorneys. The Board of Commissioners and Mr. Hamner point out in their brief in support of motions to dismiss that they "have *completed* the performance of all duties required of them . . . . and in the performance of such duties have taken no action adverse to the Plaintiff, but in contrast thereto, in each step of the proceedings have consistently acted favorably on Plaintiff's application for admission." (Brief at p. 5, citation omitted, emphasis in original.) Nonetheless, we refuse to grant the above-mentioned motions to dismiss.

---

5. Title 7, § 26 provides as follows:

   "*Limitation of one year.*—The following must be commenced within one year:

   .  .  .  .  .

   "Actions for any injury to the person or rights of another, not arising from contract, and not herein specifically enumerated."

6. The Chief Justice of the Alabama Supreme Court refused to administer the oath without the concluding phrase in

September of 1969. This litigation began in July, 1971.

7. The United States Supreme Court has said that "in the absence of a controlling act of Congress federal courts of equity, in enforcing rights arising under statutes of the United States, will . . . adopt and apply local statutes of limitations which are applied to like causes of action by the state courts." Russell v. Todd, 1940, 309 U.S. 280, 293, 60 S.Ct. 527, 534, 84 L.Ed. 754.

Simply stated the Board, Mr. Hamner and Mr. Baxley all have an interest in the outcome of this suit. The Attorney General is charged with enforcing the laws of the State, and the Board and its Secretary have duties closely connected with the admission of attorneys to the practice of law.[8] Any declaration as to the validity or invalidity of the State law here challenged cannot help but affect them in their official capacities.

Proceeding to the issue of plaintiff's motion for declaratory relief and a preliminary injunction, the question arises whether the order rendered by the Alabama Supreme Court denying plaintiff's ex parte petition was a ruling on the merits of plaintiff's petition (and as such one holding that no abridgment of first amendment rights obtains) or was a mere denial that the Alabama Supreme Court had jurisdiction to consider the merits of the petition. If the Alabama Supreme Court's decree resolved plaintiff's claim on its merits, there is some indication that this Court would be without jurisdiction to consider plaintiff's claim. Arguably, to do so would be in effect to exercise appellate jurisdiction over the State Supreme Court. Only the United States Supreme Court has such appellate jurisdiction.[9] Rooker v. Fidelity Trust Co., 1923, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362; Brown v. Chastain, 5 Cir. 1969, 416 F.2d 1012; Mackay v. Nesbet, D.Alaska 1969, 285 F. Supp. 498, aff'd, 9 Cir. 1969, 412 F.2d 846. However we do not pass on the question of the propriety of our jurisdic-

tion in such circumstances. For, if the decree of the State Court was one merely denying jurisdiction, this Court, charged with protecting the rights secured to every citizen by the Constitution of the United States, does have jurisdiction to proceed to a final determination of this cause.

The Attorney General of Alabama, in his brief on behalf of himself and of the Justices of the Alabama Supreme Court, has advanced several cogent arguments which support the contention that the State Supreme Court was without jurisdiction and did not attempt to consider the merits of plaintiff's petition. In deference to the Justices of the Alabama Supreme Court, we accept their counsel's position that the State Court did not pass upon the merits of plaintiff's case. Accordingly, the doctrines espoused in *Rooker, Brown,* and *Mackay,* are inapposite, and jurisdiction is properly grounded in the federal courts.

■ Before proceeding further it is appropriate to note the arguments advanced by the Attorney General to which we have referred. First, although under former state law the Supreme Court of Alabama was vested with authority for licensing of attorneys, it is no longer clear where such power lies.[10] Second, under Article VI, section 140 of the Constitution of Alabama, the Supreme Court has only appellate jurisdiction to entertain suits challenging the validity of a state statue. That Court has consistently refused to pass upon the constitutionality of an Alabama statute

8. Mr. Baxley, as Attorney General, on behalf of himself and the Justices of the Alabama Supreme Court, argues in brief that Section 2974, Code of Alabama 1907, no longer effective, "contained the last authority for the licensing of attorneys at law and the signing of the license by all the members of the Supreme Court," and that "[t]he *organ* now designated by the Legislature is the Board of Commissioners acting through a Board of Examiners, as provided in Section 25, Title 46, Code of 1940." (Emphasis in the brief. See typed brief, pp. 4 and 5.) See further footnote 10, *infra.*

9. In the instant case, however, plaintiff's ex parte petition presented no "case or controversy" of which the United States Supreme Court could acquire jurisdiction by granting certiorari. In a similar vein, there is unpersuasive argument that the doctrine of res judicata would bar our consideration of this case.

10. It should be noted that inferentially Title 46, § 25 of the Alabama Code recognizes that the State Supreme Court has authority to license attorneys. Moreover, it has been the custom for decades that the Justices of the Supreme Court sign such licenses.

unless the question has first been properly raised in a court of original jurisdiction. *E. g.*, Smith v. State, 1966, 280 Ala. 241, 192 So.2d 443; City of Mobile v. Gulf Development Co., 1965, 277 Ala. 431, 171 So.2d 247. Third, the record of the proceedings does not reflect that the Attorney General was served with a copy of plaintiff's complaint to the State Supreme Court. Under Title 7, section 166 of the Alabama Code, such service is required where declaratory relief from a state statute is sought, and in Wheeler v. Bullington, 1956, 264 Ala. 264, 87 So.2d 27, the Supreme Court of Alabama held that the prescription of section 166 is mandatory and goes to the jurisdiction of the court. Though it is not at all clear that plaintiff's ex parte petition to the State Supreme Court constituted a suit for declaratory relief within the meaning of section 166, the Attorney General's argument deserves some weight. Fourth and finally, in the Attorney General's brief it is stated that the Alabama Supreme Court "has not considered the constitutional validity of sections 39 and 40, Title 46, Code of Alabama 1940, nor has it been called upon to construe said sections as applied to one in plaintiff's position." (Brief at pp. 7–8.) We feel particularly constrained to pay heed to the characterization on behalf of the Justices of their consideration of and decision on plaintiff's ex parte petition.

Being thus convinced that the State Supreme Court has not considered the merits of plaintiff's constitutional challenge to the oath provision, this Court has the power to do so.

That federal jurisdiction exists does not perforce require its exercise. In certain circumstances it is a judicious policy for the court in its discretion to abstain. The Supreme Court of the United States in Railroad Commission v. Pullman Co., 1941, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971, announced what is perhaps the most common cause for abstaining. Therein, the Court averred that a federal court should avoid deciding a case on federal constitutional grounds where a state court determination on the

basis of state law could dispose of the case. The doctrinal underpinnings of the abstention doctrine are closely akin to notions of comity—that needless friction between state and federal judicial systems should be shunned. *See Pullman, supra;* Hobbs v. Thompson, 5 Cir. 1971, 448 F.2d 456.

It should be remembered, though, that where a federal court abstains, its role in the proceedings is not necessarily concluded, nor is the case closed. England v. Louisiana State Board of Medical Examiners, 1964, 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440. The result is piecemeal litigation. First, the parties are relegated to the state courts for an adjudication of questions of state law. The state court cannot consider the federal constitutional question. If such state litigation disposes of the controversy between the parties, then the case comes to an end. If, however, the state suit does not avoid the necessity of facing the federal constitutional question, the parties must return to the same federal court which initially abstained, and there the constitutional dispute must be fully tried.

In the case here presented, all necessity of addressing plaintiff's federal claim could be obviated by a state judicial construction of Title 46, section 39 of the Alabama Code (the oath provision) that would permit of administering the oath without a reference to God. The federal question could also be avoided if the state court were to find section 39 in violation of Article I, section 3 of the Alabama Constitution, which forbids certain religious tests.

■ Essentially the decision whether to abstain requires a balancing of interests—the benefit of keeping federal courts out of what are peculiarly state affairs against the virtue of affording the litigants swift vindication of federally protected rights. In essaying to weigh the competing interests in this case, we find that the scales tip in the plaintiff's behalf.

■ We begin by noting that plaintiff has somewhat of an advantage at the

outset. As Judge Goldberg has quite artfully noted in a recent opinion:

"[E]very constitutional right under every circumstance is not to be put on ice awaiting the hearing of the anvils of state adjudication. Since the doctrine [of abstention] has the effect of frustrating a federal litigant in his choice of an otherwise appropriately invoked federal forum, it has been applied only in narrowly limited 'special circumstances.' Propper v. Clark, 1949, 337 U.S. 472, 492, 69 S.Ct. 1333, 93 L.Ed. 1480; Zwickler v. Koota, *supra*, 389 U.S. [241] at 248, 88 S.Ct. 391 [19 L.Ed.2d 444] and cases cited in n. 10."

*Hobbs, supra,* 448 F.2d at 462. In effect, the burden is upon the party seeking abstention to demonstrate the "special circumstances." We can find no such exigent justification.

In the case *sub judice* plaintiff seeks to assert first amendment rights, rights which are of paramount importance to our society. As will be discussed below, the statute at issue, section 39, infringes upon the free exercise clause of the first amendment. It seeks to limit the practice of law to those men and women who are willing to invoke the help of God. In such a case, the statute is overbroad, and courts have been quick to deny abstention in a first amendment overbreadth case. *Hobbs, supra,* 448 F.2d at 462. Put shortly, delayed vindication is intolerable in first amendment cases absent special circumstances not here present.

In the brief on behalf of the Attorney General and the Justices of the Supreme Court of Alabama it is asserted that the State Supreme Court is without authority to license attorneys and that, in fact, the law is not even clear as to whether a license is required. For this Court to abstain would be to relegate plaintiff to a most unclear course in the state courts. Would it suffice for him merely to take the existing oath without the closing phrase "so help me God" either before the present Chief Justice or before some other state officer empowered to administer oaths, and again make application to the Justices to issue him a license to practice law? Should he file a suit seeking a construction of section 39 in a state court of original jurisdiction? How could adequate appellate review be provided if the Justices are themselves the proper parties to issue a license required for plaintiff to practice law? The amount of time which plaintiff would probably have to spend floundering about in the state judicial system is imponderable. In sum, we cannot abstain where substantial first amendment rights are at stake and where to do so would greatly delay vindication of plaintiff's rights. We would in effect be forcing him to pursue a heretofore uncharted course in the state courts. It has been more than two years since plaintiff attempted to take the attorney's oath. We cannot hold that he must wait for an indefinitely longer period.

Having disposed of the procedural issues, it is appropriate to address the merits of plaintiff's case.

With respect to religion, the first amendment disables the state in two distinct instances: There shall be no establishment of religion; all citizens shall be free to exercise whatever religious precepts they hold. The strictures of that amendment have been made applicable to the States by the fourteenth amendment. Illinois ex rel. McCollum v. Board of Education, 1948, 333 U.S. 203, 210–211, 68 S.Ct. 461, 92 L.Ed. 649; Everson v. Board of Education, 1947, 330 U.S. 1, 8, 67 S.Ct. 504, 91 L.Ed. 711.

Plaintiff here alleges infringements of both the establishment clause and the free exercise clause. We find the first of those alleged infringements to be without merit. In essence, the plaintiff is without "standing" to challenge section 39 on a theory that its legislative intendment was or that its primary effect is the establishment of a religion.[11]

---

11. *Cf.* O'Hair v. Paine, W.D.Texas 1969, 313 F.Supp. 434, aff'd *per curiam,* 5 Cir. 1970, 432 F.2d 66. In *O'Hair* plaintiffs, who were atheists, sought to challenge

■ However, we are of the opinion that plaintiff's right to the free exercise of his religious beliefs has been abridged by section 39. He has testified to this Court that for religious reasons he sincerely objects to taking an oath to God before the civil authorities. As Justice Jackson noted in Zorach v. Clauson, 1952, 343 U.S. 306, 324, 325, 72 S.Ct. 679, 689, 96 L.Ed. 954 (dissenting opinion): "It is possible to hold a faith with enough confidence to believe that what should be rendered to God does not need to be decided and collected by Caesar." This Court has no reason to doubt plaintiff's sincerity; nor do the defendants challenge plaintiff's cause on that ground. We find plaintiff's testimony as to his sincerity to be true and proceed accordingly.

The Supreme Court of the United States in School District of Abington Township v. Schempp, 1963, 374 U.S. 203, 223, 83 S.Ct. 1560, 1572, 10 L.Ed.2d 844, announced the standard of the free exercise clause.

"Its purpose is to secure religious liberty in the individual by prohibiting any invasions thereof by civil authority. Hence it is necessary in a free exercise case for one to show the coercive effect of the enactment as it operates against him in the practice of his religion."

Plaintiff has clearly met the requisite showing of coercion. In Sherbert v. Verner, 1963, 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965, the Court said with respect to a Seventh Day Adventist who for reasons of her religion had refused to accept work on Saturdays and who had on account of that refusal been denied unemployment compensation:

"Here not only is it apparent that appellant's declared ineligibility for benefits derives solely from the practice of her religion, but the pressure upon her to forego that practice is unmistakable. The ruling forces her to choose between following the precepts of her religion and forfeiting benefits, on the one hand, and abandoning one of the precepts of her religion in order to accept work, on the other. Governmental imposition of such a choice puts the same kind of burden upon the free exercise of religion as would a fine imposed against appellant for her Saturday worship."

*Id.* at 404, 83 S.Ct. at 1794. The Court went on to invalidate the challenged state process.

Plaintiff has been forced to the same Hobson-like choice. He must either forego the practice of law or violate his religious beliefs.[12]

---

the astronauts' use of prayers during the Apollo VIII mission. One basis for their suit was that such prayers, in subjecting plaintiffs to talk of God, served to abridge their free exercise of religion. The district court pointed out that although a National Aeronautics and Space Administration order requiring such prayers might involve some element of coercion with regard to the astronauts, the plaintiffs were in no position to complain of that fact. Analytically, the situation here presented is the same. The establishment of a religion espousing God, even if the use of the challenged phrase has such effect, cannot be attacked by the plaintiff since he admits such a belief.

12. Mr. Justice Douglas speaking for the Court in Zorach v. Clauson, 1952, 343 U.S. 306, 313, 72 S.Ct. 679, 96 L.Ed. 954, implied that the use of the phrase "so

help me God" in courtroom oaths is not violative of the first amendment. That conclusion, correct or incorrect, is without impact on this case. First, the statements of Mr. Justice Douglas are at best dicta. Second, the context in which they were rendered is quite distinct from that here present. *Zorach* involved a challenge to a state program which released school age children from the public schools in order that they might attend private, religious classes. In sum, the alleged first amendment violation was grounded in the establishment clause. Indeed, said the Court: "It takes obtuse reasoning to inject any issue of the 'free exercise' of religion into the present case." *Id.* at 311, 72 S.Ct. at 682. Properly viewed, *Zorach* was directed solely to questions of establishment. Further, the Court in *Zorach* noted the absence of any element of coercion: "Hence we put aside [the]

■ Having determined that the plaintiff has adequately demonstrated a violation of his first amendment rights, it still remains to weigh the State's interest in requiring the oath provision at issue. All state statutes abridging constitutional rights are not per se invalid. However, it is clear beyond cavil that statutes which infringe upon the free exercise clause are quite suspect. The test imposed was properly limned by the Supreme Court in N.A.A.C.P. v. Button, 1963, 371 U.S. 415, 438, 83 S.Ct. 328, 340, 9 L.Ed.2d 405: "The decisions of this Court have consistently held that *only a compelling state interest* in the regulation of a subject within the State's constitutional power to regulate can justify limiting First Amendment freedoms." (Emphasis supplied.) The compelling interest test was reiterated in Sherbert v. Verner, *supra*, 374 U.S. at 403, 406, 83 S.Ct. 1790. And even earlier in Thomas v. Collins, 1945, 323 U.S. 516, 530, 65 S.Ct. 315, 323, 89 L.Ed. 430, the Court hinted at the existence of a higher standard in first amendment cases: "The rational connection between the remedy provided and the evil to be curbed, which in other contexts might support legislation against attack on due process grounds, will not suffice. . . . *Only the gravest abuses, endangering paramount interests, give occasion for permissible limitation.*" (Emphasis supplied.)

■ Every State may properly require each prospective member of the Bar to demonstrate that he has the requisite knowledge to practice law and that he is of sound moral character. Law Students Civil Rights Research Council, Inc. v. Wadmond, 1971, 401 U.S. 154, 91

S.Ct. 720, 27 L.Ed.2d 749; In re Stolar, 1971, 401 U.S. 23, 91 S.Ct. 713, 27 L.Ed.2d 657; Baird v. State Bar of Arizona, 1971, 401 U.S. 1, 91 S.Ct. 702, 27 L.Ed.2d 639. Further, it is well settled that the States may extract from each applicant a solemn oath that in performing his professional duties he will apply his knowledge skillfully and ethically. The State has a legitimate interest in securing some such oath. However, we cannot in good conscience find that Alabama has a compelling interest in demanding that the oath invoke the help of God. To satisfy the compelling interest test, in light of the infringement on plaintiff's first amendment rights, the defendants must show "that no alternative forms of regulation" would suffice. Sherbert v. Verner, *supra*, 374 U.S. at 407, 83 S.Ct. at 1796. We believe that there are alternative forms of oath which would embrace the required solemnity.

■ We must now consider the appropriate remedy in light of the foregoing analysis. We need not declare Title 46, section 39 unconstitutional in its entirety. Plaintiff himself objects only to inclusion of the words "so help me God." Admittedly, plaintiff's concept of religion is an unusual one, and it would be seldom indeed that the phrase here at issue might infringe upon the free exercise of a person's religion. Accordingly, we do not declare section 39 wholly unconstitutional or strike the phrase which plaintiff finds offensive. Instead, we hold that it is a violation of the Constitution for the State of Alabama to compel plaintiff to swear an oath invoking the help of God as a prerequisite to entering upon the practice of law. *See* Sherbert v. Verner, *supra*, 374 U.S. at 410, 83 S.Ct. 1790. Of course, it

claim of coercion both as respects the 'free exercise' of religion and 'an establishment of religion' within the meaning of the First Amendment." *Id.* at 311–312, 72 S.Ct. at 682. Whatever the intended force of Justice Douglas' remarks with respect to the phrase "so help me

God," they were rendered in a factual context wanting an element of "coercion," an element which is indeed present in the case here presented. Clearly, then, *Zorach* in no way forecloses granting of relief to this plaintiff.

would be a similarly unconstitutional act to force any qualified person to take such an oath if he objected on sincere religious principles. But, nothing in this opinion should be construed as forbidding the State from requiring each prospective attorney to pronounce the oath contained in the challenged provision and to conclude with an invocation of the help of God unless the prospective attorney professes a sincere religious objection to such an act.

In light of the above reasoning we find no need to pass upon plaintiff's other constitutional challenges to section 39; nor do we find occasion to pass upon the validity of Title 46, section 40 (which imposes a fine for practicing law without having first taken the oath prescribed in section 39).

Having declared the concluding phrase of section 39 unconstitutional in its application to plaintiff, we feel no compulsion to grant further relief at this time. As Judge Friendly has noted:

> "Considerations of comity to respected fellow-judges suggest they should be afforded a reasonable opportunity to reflect on our conclusions and perhaps take action that may obviate any occasion for [further relief]."

Law Students Civil Rights Research Council, Inc. v. Wadmond, S.D.N.Y.1969, 299 F.Supp. 117, 133, aff'd, 1971, 401 U.S. 154, 91 S.Ct. 720, 27 L.Ed.2d 749.

JOHNSON, District Judge (specially concurring):

While I concur in the result reached by Judges Rives and Varner, I do not subscribe to the reasoning that provides the basis for the conclusion or the conclusion that the phrase of Title 46, section 39 of the Code of Alabama, "so help me God" constitutes a prohibition of the free exercise of religion in violation of the Constitution of the United States.